UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

'03 MAR 13 P4:59

LISA KESNER,

        Plaintiff,

vs.

                                Hon. Lawrence P. Zatkoff
                                No. 01-71994

LITTLE CAESARS ENTERPRISES, INC.,
a Michigan corporation, OLYMPIA AVIATION,
L.L.C., a Michigan limited liability company,
OLYMPIA ENTERTAINMENT, INC., a
Michigan corporation, and DETROIT TIGERS,
INC., a Michigan corporation, and M&M ILITCH
HOLDINGS, INC., a Michigan corporation,
Jointly and Severally,

        Defendants.

_____/

| | |
|---|---|
| DEBORAH L. GORDON  P27058<br>Attorney for Plaintiff<br>26862 Woodward Avenue<br>Suite 202<br>Royal Oak, MI  48067-0959<br>(248) 542-3784 | Stanley C. Moore, III (P 23358)<br>Michael D. Weaver (P 43985)<br>Plunkett & Cooney, P.C.<br>Attorneys for Defendants/Third Party<br>Plaintiffs<br>38505 Woodward, Suite 3000<br>Bloomfield Hills, MI 48034<br>(248) 901-4025 |
| KEITH J. KECSKES (P 48560)<br>Paul S. Miller (P 48025)<br>Miller & Kecskes, PLLC<br>Attorneys for Plaintiff<br>30700 Telegraph Road, #3475<br>Bingham Farms, MI 48025<br>(248) 644-8000 | |

## NOTICE OF HEARING

TO:      DEBORAH L. GORDON
             KEITH J. KECSKES

PLEASE TAKE NOTICE that Olympia Aviation's Renewed Motion For

Directed Verdict, Motion For JNOV And Motion For Remitter And Motion For New Trial

will be brought on for hearing before the Honorable Lawrence P. Zatkoff, United States

District Court Judge, Eastern District of Michigan, Southern Division, on a date to be set

by the court.

PLUNKETT & COONEY, P.C.

BY: _____

MICHAEL D. WEAVER  P43985
Attorney for Defendant
38505 Woodward Avenue
Suite 2000
Bloomfield Hills, MI  48304
Tele:  (248) 901-4025

Dated:  March 13, 2003

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LISA KESNER,

          Plaintiff,                            Hon. Lawrence P. Zatkoff

vs.                                        No. 01-71994

LITTLE CAESARS ENTERPRISES, INC.,
a Michigan corporation, OLYMPIA AVIATION,
L.L.C., a Michigan limited liability company,
OLYMPIA ENTERTAINMENT, INC., a
Michigan corporation, and DETROIT TIGERS,
INC., a Michigan corporation, and M&M ILITCH
HOLDINGS, INC., a Michigan corporation,
Jointly and Severally,

          Defendants.

_____/

| | |
|---|---|
| DEBORAH L. GORDON  P27058<br>Attorney for Plaintiff<br>26862 Woodward Avenue<br>Suite 202<br>Royal Oak, MI  48067-0959<br>(248) 542-3784 | Stanley C. Moore, III (P 23358)<br>Michael D. Weaver (P 43985)<br>Plunkett & Cooney, P.C.<br>Attorneys for Defendants/Third Party<br>Plaintiffs<br>38505 Woodward, Suite 3000<br>Bloomfield Hills, MI 48034<br>(248) 901-4025 |
| KEITH J. KECSKES (P 48560)<br>Paul S. Miller (P 48025)<br>Miller & Kecskes, PLLC<br>Attorneys for Plaintiff<br>30700 Telegraph Road, #3475<br>Bingham Farms, MI 48025<br>(248) 644-8000 | |

**OLYMPIA AVIATIONS RENEWED MOTION
FOR DIRECTED VERDICT, MOTION FOR JNOV AND
MOTION FOR REMITTER AND
MOTION FOR NEW TRIAL**

## TABLE OF CONTENTS

FACTS...........................................................................................................................1

EMPLOYMENT HISTORY .........................................................................................1

PLAINTIFF'S CLAIM FOR FUTURE DAMAGES IS BARRED FOR FAILURE TO
PRESENT EVIDENCE OF LIFE EXPECTANCY AND/OR WORK LIFE EXPECTANCY
.....................................................................................................................................2

PLAINTIFF'S CLAIM FOR NON-ECONOMIC DAMAGES MUST FAIL.........................3

PLAINTIFF'S CLAIM FOR ECONOMIC DAMAGES MUST FAIL..................................5

PLAINTIFF'S CLAIM OF SEXUAL HARASSMENT MUST FAIL...................................8

## INDEX OF AUTHORITIES

**CASES**

*Burns v. City of Detroit*, 2002 Mich App Lexis No. 1507 ...............................................14

*Harris v Forklift Systems, Inc.*, 510 U.S. 17 (1993)........................................................16

*Little v Bousfield & Co*, 165 Mich 654, 656 (1911).........................................................7

*Moody v Pepsi-Cola*, 915 F.2d 201 (6th Cir. 1990).........................................................8

*Perry v Chermin,* 123 F. 3d. 1010, 1013 (7th Cir. 1997)................................................16

*Socony Vacuum Oil Co v Marvin*, 313 Mich 528 (1946) ...............................................12

*Sterling v Union Carbide Co*, 142 Mich 284 (1905) ........................................................7

*Wiskotoni v Michigan Natl. Bank*, 716 F 2d 378 (6th Cir. 1983)......................................8

**OTHER AUTHORITIES**

PA 226 of 1994........................................................................................................7

**RULES**

Fed. R. Civ. P. 50 ..................................................................................................6

Fed. R. Civ. P. 60 ..................................................................................................6

Defendant brings this Motion based upon Fed. R. Civ. P. 50 and Fed. R. Civ. P. 60.

## FACTS

This cause of action arises out of the filing of Plaintiff's Complaint in the Wayne County Circuit Court on or about April 30, 2001. The case was removed to the United States District Court.

In her Complaint, Plaintiff alleges that she was an employee of Olympia Aviation when she was subjected to sexual harassment which created a hostile work environment. Plaintiff's claims for sexual discrimination, retaliatory discharge, intentional infliction of emotional distress, defamation and tortious interference with business expectations have been dismissed by way of summary judgment. Plaintiff named as Defendants LITTLE CAESAR ENTERPRISES, INC., OLYMPIA AVIATION, L.L.C., OLYMPIA ENTERTAINMENT, INC., DETROIT TIGERS, INC. and M&M ILITCH HOLDINGS, INC. Plaintiff named to individual Defendants. The only remaining Defendant is OLYMPIA AVIATION, L.L.C. The jury ultimately returned a verdict as follows:

| | |
|---|---|
| Present economic damages: | $75,000.00 |
| Present non-economic damages: | $75,000.00; |
| Future non-economic damages: | $50,000.00 |

## EMPLOYMENT HISTORY

At the outset of Plaintiff's employment, Plaintiff, like all employees of Little Caesar Enterprises, received the employee handbook which included the Anti-Discrimination/Harassment Policy (see Defense Exhibit 1). Plaintiff was aware of the

policy and, as will be discussed later, followed the policy when she had a complaint to report.

## PLAINTIFF'S CLAIM FOR FUTURE DAMAGES IS BARRED FOR FAILURE TO PRESENT EVIDENCE OF LIFE EXPECTANCY AND/OR WORK LIFE EXPECTANCY

The standard jury instruction SJI 2d 53.01 & 53.02 have been deleted and are no longer read to a jury. These jury instructions were based upon the mortality tables which were deleted from the insurance code by 1994 PA No. 226. Jury instructions are to be given, in the discretion of the court, when they accurately represent the law, are appropriate to the case and are requested. After the repeal of the mortality tables, these instructions no longer accurately represented the law.

Since the instructions and table are no longer in use or authoritative, it is incumbent upon the Plaintiff to introduce evidence of the life expectancy of the Plaintiff and/or the work life expectancy of the Plaintiff. This evidence is to be introduced as part of Plaintiff's case in chief. Lack of evidence as to this element of damages is fatal. Plaintiff produced no evidence of life expectancy and, accordingly, the award of future damages must be eliminated.

The case law refers to mortality tables as long ago as 1905. See *Sterling v Union Carbide Co*, 142 Mich 284 (1905). The *Sterling, supra*, court held that the mortality table was not conclusive if there was other evidence. The court allowed evidence that the plaintiff's ancestors were long-lived. Conversely, it was held that the tables were conclusive unless there is other evidence tending to show a probability of life greater or less than that shown by the tables. *Little v Bousfield & Co*, 165 Mich 654,

2

656 (1911).  Other cases indicate that courts are entitled to take judicial notice of the statutory mortality tables.  See *Ally v Klotz*, 320 Mich 521, 539 (1948).

The Legislature chose to repeal the statutory mortality tables in §(7) of PA 226 of 1994.  They authorized alternative ways of valuing insurance policies, including the adoption by rule of a mortality table by the Insurance Commissioner.

The repeal of the mortality table left the courts without statutory table from which they could take judicial notice of life expectancy.  The instructions no longer accurately state the law because the mortality tables are no longer the law!

Again, in the absence of a mortality table, plaintiffs are required to introduce evidence, through expert testimony, in support of the life expectancy and work life expectancy of the plaintiff as part of their case.  To allow otherwise, would allow the jury to speculate as to the length of time the plaintiff may suffer damages in the future.

In the instant action, Plaintiff presented no evidence indicating that she was of a particular health and condition such that she would have a defined life expectancy or work life expectancy.  Therefore, the jury must not be allowed to speculate on future damages.

Accordingly, the jury award of future damages must be stricken.

### PLAINTIFF'S CLAIM FOR NON-ECONOMIC DAMAGES MUST FAIL

Plaintiff presented no evidence from a psychiatrist, a psychologist, a social worker, a priest or other clergy, or even a counselor.  Instead, Plaintiff's entire claim for non-economic damages rests upon a small portion of Plaintiff's testimony wherein she indicated that she was, "angry, humiliated, intimidated and upset." While some relevant case law indicates that expert testimony is not necessary to maintain this portion of

3

Plaintiff's claim, it is clear that Plaintiff did not present sufficient testimony to survive Directed Verdict or JNOV. In the case of *Moody v Pepsi-Cola*, 915 F.2d 201 (6th Cir. 1990), the court noted that a Plaintiff must present "specific and definite evidence" of mental anguish, anxiety or distress. (see Exhibit "A") In *Moody, Supra*, the plaintiff was in a state of "shock" and cried. He was forced to move to Florida and reside away from his family. His spouse testified that he was dejected at home and cried often. Indeed, plaintiff's spouse indicated that her husband "never really pulled out of it."

In the instant action, there is no testimony from Plaintiff's spouse. There is no evidence of a change in domicile. There is no evidence of crying. In fact, all evidence has shown that Plaintiff never cried on the airplane. Likewise, when relaying this information to Mark Oumedian and others, Plaintiff was never reduced to tears.

Conversely, there is evidence of significant emotional trauma pre-dating the events forming the basis of Plaintiff's complaint.

In the case of *Wiskotoni v Michigan Natl. Bank*, 716 F 2d 378 (6th Cir. 1983) the Court was faced with a similar issue. (see Exhibit "B") In that case, the plaintiff testified that he was required to move his domicile to start a new life and to protect his children from adverse publicity. Also, he had many unsuccessful searches for jobs and he had to take a job as an apple picker and a bartender (plaintiff was a banker). Plaintiff testified that he had a "funny feeling that nobody wants me." The court, in granting defendant JNOV on the issue of mental anguish damages, cited *Vachon v Todorovich*, 356 Mich 182, 188 (1959), holding as follows:

> [The plaintiff], carrying the burden of proof of damages as
> alleged by her, offered no proof in support of the above
> allegations other than her own testimony that 'to a certain
> extent I have been nervous and this here aggravated it

4

more,' also that she gets 'that feeling' she didn't have before the accident, resulting in 'those crying spells.' Her testimony was vague and uncertain, and it gave the jury little or nothing into which its members could set their damage-assessment teeth. *Wiskotoni v Michigan Natl. Bank,* 716 F 2d 378, 388-389.

So, too, in the instant action, Plaintiff has given no testimony for the jury to "set their damage-assessment teeth" into. Indeed, Plaintiff provided no indication that she had funny feelings, that she had crying spells, that she moved her domicile to avoid adverse publicity (indeed Plaintiff sought out publicity and continues to seek out publicity) or that she was required to take lower paying jobs or even that she searched for new employment without success. Plaintiff is requesting that the jury speculate as to the amount of damages. Directed verdict and/or JNOV is warranted.

## PLAINTIFF'S CLAIM FOR ECONOMIC DAMAGES MUST FAIL

A.      **THERE IS NO VIABLE CAUSE OF ACTION SUPPORTING A CLAIM FOR ECONOMIC DAMAGES.**

In this case, Plaintiff did not allege a wrongful discharge or constructive discharge. Plaintiff did allege a retaliatory discharge. However, that claim was dismissed on summary judgment. Therefore, there is no viable legal theory under which Plaintiff can present a claim for economic damages. Indeed, the Court ruled, as a matter of law, that Plaintiff's claim for retaliatory discharge could not survive summary judgment. However, Plaintiff asked, over Defendant's objection, for economic damages. Indeed, the Court stated, in its Opinion, on page 17, " . . . Plaintiff provides no significantly probative evidence sufficient to raise a genuine issue of material fact regarding whether there was a causal connection between the protected activity and the adverse employment action. Therefore, Defendant's Motion for Summary Judgment as

5

to Plaintiff's claim of Retaliation is GRANTED." [emphasis in original] Clearly, there is no basis for economic damages. In fact, it seems impossible to award economic damages (especially future economic damages) against a company that has ceased operations. How could the Plaintiff prove that she is entitled to future economic damages when Olympia Aviation could not have provided Plaintiff with economic opportunities after October 13, 2000. Therefore, as a matter of law, the economic damages must be removed from the verdict.

**B.       PLAINTIFF SUBMITTED NO EVIDENCE TO SUPPORT A CLAIM FOR ECONOMIC DAMAGES.**

To the extent that Argument A. fails, Plaintiff's claim for economic damages is without merit on its face. Plaintiff has testified that she earned $200.00 per flight. Plaintiff has not provided testimony as to the number of flights she might be expected to take in a given year or season. Indeed, testimony from Dennis Gease indicates that Plaintiff was a part time employee. Testimony from Dennis Gease, Mark Oumedian and Plaintiff all confirm that Plaintiff was a contingent employee who did not have a contract of employment. Plaintiff testified that neither Chris Ilitch, Denise Ilitch, Mr. Ilitch or Dennis Gease guaranteed Plaintiff a set number of flights in any given year. Certainly, Plaintiff was not guaranteed to fly beyond the 2000 season. Mr. Gease further acknowledged that he could decide if a particular flight attendant would fly on a trip or not. Clearly there was no guarantee that any flight attendant would fly a guaranteed number of flights per year or season. The evidence presented by Plaintiff again leaves the jury to speculate on economic damages.

6

**C.      PLAINTIFF'S CLAIM FOR ECONOMIC DAMAGES IS BARRED BY FALSE STATEMENTS MADE ON PLAINTIFF'S JOB APPLICATION.**

That is, although Plaintiff certified that all information contained on the

application was truthful and accurate, she did not provided truthful and accurate

information. Indeed, when questioned, on the job application, about her educational

background, Plaintiff indicated that she had completed the 12th grade. At Trial, Plaintiff

admitted that she left school in the 10th grade and did not complete her GED until 4

years after she signed and verified her job application. This evidence, although after-

acquired, bars future economic damages. *Grow v W.A. Thomas Co.*, 236 Mich App 696

(1999) and *McKennon v Nashville Banner Publishing Co.*, 513 US 352 (1995).

**D.      PLAINTIFF'S DAMAGES, IF ALLOWED TO STAND, MUST BE REDUCED BY PLAINTIFF'S FAILURE TO MITIGATE DAMAGES.**

A party who alleges to be damaged must be reasonable efforts, and

exercise reasonable care to reduce the result of damages, as much as practicable,

under the circumstances of a particular case. *Socony Vacuum Oil Co v Marvin*, 313

Mich 528 (1946). In the instant action, Plaintiff acknowledged that she was offered an

opportunity to fly Gulf Stream two flights after October 13, 2000. Plaintiff refused this

offer.

Plaintiff provided testimony only that she may have contacted Volkswagon

in an effort to secure replacement employment. Then, in December, 2001, nine (9)

months after Plaintiff failed her instant litigation, Plaintiff claims to have submitted a

resume to Top Flight Aviation. The Court will recall that Chuck Shipp indicated that he

never received such a resume. Plaintiff did not apply for employment in October 2000

or November 2000 with Top Flight Aviation even though Plaintiff was well aware that

7

this entity would now be fulfilling flight operations for the Detroit Tigers, Detroit Red Wings and Mr. and Mrs. Ilitch. Likewise, Plaintiff did not present any evidence that she made any type of concerted effort to reduce any potential damages.

As it relates to non-economic damages, Plaintiff presented no evidence to indicate that she received counseling from a psychiatrist, psychologist, social worker, priest or counselor to reduce any emotional distress/non-economic damages she may have sustained. Clearly, the jury's verdict is against the great weight of the evidence and the award must be reduced, at least, by Plaintiff's failure to mitigate damages.

## PLAINTIFF'S CLAIM OF SEXUAL HARASSMENT MUST FAIL

Lastly, Plaintiff claims that Defendants sexually harassed her, creating, allowing or failing to prevent a hostile work environment and creating, allowing or failing to prevent a quid pro quo sexual harassment (see Plaintiff's Complaint, Count I).

Again, it should be noted that there are no individual defendants in this cause of action.

The employee handbook, a copy of which was received by Plaintiff as well as all other employees, strictly prohibits any type of discrimination or harassment (see Defense Trial Exhibit 1 – Anti-Discrimination Policy portion of employee handbook). The policy indicates that complaints are to be made to the Human Resource Center. Further, the policy indicates that an investigation will be undertaken in the most discreet fashion possible.

Dennis Gease testified that Rob Mintari provided sexual harassment training to employees of Olympia Aviation. Mr. Gease also testified that the policies that governed Plaintiff's original employment were the same policies that governed Plaintiff's

8

subsequent employment.   Further, Mr. Gease testified that he had seen the Little

Ceasar's Team Member Handbook and noted the sexual harassment policy setforth

within the handbook.  Finally, Mr. Gease followed the sexual harassment reporting

policy contained within the handbook.  Clearly, under Mr. Gease's testimony, the

employee handbook applied to Plaintiff during any employment with flight operations.

Moreover, Mark Oumedian, a gentleman instrumental in drafting the

handbook, testified that the handbook was applicable to Plaintiff's employment at flight

operations.

Finally, Plaintiff herself acknowledged that she had reviewed the

handbook, understood that handbook and agreed to follow the policies contained within

the handbook.  (see Defense Trial Exhibit 2)

To prevail on this claim, Plaintiff must prove the following elements:

a.     She was a member of a protected class;
b.     She was subjected to unwelcome harassment;
c.     The harassment complained of was based upon sex;
d.     The harassment unreasonably interfered with
       plaintiff's work environment and was severe and
       pervasive and the employee knew or should have
       known of the charged sexual harassment and failed
       unreasonably to take prompt and appropriate
       corrective action.

*Burns v. City of Detroit*, 2002 Mich App Lexis No. 1507.

In the instant action, Plaintiff fails to meet a number of the elements

required to maintain this claim.  That is, Plaintiff acknowledged repeatedly during the

trial that at all times she performed to at least an acceptable level while working as a

flight attendant.

9

What is more troubling is the fact that plaintiff never raised issues with regard to the activities of the players other than two isolated incidents. First, Plaintiff told Mark Oumedian that the players, on one flight, had pornography on one laptop. Second, Plaintiff informed Mark Oumedian that she observed a player smoking before a flight left the airport on one flight. Finally, Christina Sharpe indicated that on one occasion, Plaintiff was called a bitch by a player. These events appear to be isolated and did not create the "hellish" environment required to establish a hostile work environment. Certainly, the events related in Plaintiff's testimony do not provide evidence of sexual harassment which is severe, pervasive and permeates the work environment. Moreover, Plaintiff fails to meet another element of the charge, that the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action and that the activities were severe and pervasive in the work environment."

Indeed, when informed of any complaint by Plaintiff, Defendant took prompt action and conducted a thorough investigation leading to appropriate corrective action, the termination of Rob Mintari.

It was not until Plaintiff initiated this litigation that defendants learned that Plaintiff had a belief that she was subject to a hostile work environment. By that time, the flight operations at Olympia Aviation had been discontinued with said responsibility being shifted to Chuck Shipp and his company, Top Flite.

In essence, whether or not the complaints raised by Plaintiff in her Complaint or throughout discovery are true or not is irrelevant. That is, Plaintiff's failure to follow the anti-discrimination policy and its reporting provisions, prevented

10

Defendants from undertaking a prompt and thorough investigation and taking appropriate corrective action. Conversely, when Plaintiff actually followed the anti-discrimination policy and its reporting provision, defendants undertook a prompt and thorough investigation and took the appropriate corrective action. Indeed, Plaintiff has acknowledged making the following reports which were **immediately remedied:**

1.   Smoking on the aircraft;
2.   Pornography on a laptop on one flight;
3.   Various issues involving Rob Mintari.

Plaintiff acknowledged on many occasions during trial that she was not yelled at due to her gender. Instead, for the most part Plaintiff admitted that she was the subject of some animosity because she reported what she believed to be inappropriate activity on the airplane.

Under Elliott-Larsen, a hostile work environment exists only when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the condition of the victim's employment and create an abusive working environment. *Harris v Forklift Systems, Inc.*, 510 U.S. 17 (1993).

Not every unpleasant workplace is a hostile work environment. The occasional vulgar banter, tinted with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be actionable. The workplace that is actionable is one that is hellish. *Perry v Chermin*, 123 F. 3d. 1010, 1013 (7th Cir. 1997).

The determination of a hostile work environment must be based upon "whether a reasonable person in the totality of the circumstances, would have perceived

11

the conduct at issue to be substantially interfering with the plaintiff's employment or

having the purpose or effect of creating an intimidating, hostile or offensive employment

environment. *Radtke v Everett*, 442 Mich. 368 (1993).

A review of a recent case is enlightening. In *Ocheltree v Scollon Products*

*Inc*, 308 F 3rd 351 (4th Cir. 2002), plaintiff brought a sexual harassment/hostile work

environment claim alleging that her supervisor and coworkers sang vulgar songs, used

profanity and simulated sex acts with mannequin and used profane language and told

sexually oriented jokes. The court stated that "not all sexual harassment that is directed

at an individual because of his or her sex is actionable". The occasional banter, tinged

with sexual innuendo, of coarse or boorish workers would be neither pervasive nor

offensive enough to be actionable. The work place that is actionable is one that is

hellish. *Ocheltree v Scollon*, 038 F 3rd 351 (4th Cir. 2002) (See Exhibit C, p 9))

Interestingly, in *Ocheltree, supra*, the language used include the following:

mother fucker
faggot
dick head
pussy
blow job
ass.

The court noted that these were not "unambiguous gender epithets, such that it would
be reasonable to assume that they were animated by gender bias. (See Exhibit C, p. 8)
The 4th Circuit reversed the verdict granted in favor of plaintiff in

*Ocheltree*. Clearly, the acts and language in *Ocheltree* exceed those complained of in

Plaintiff in the instant action. Accordingly, directed verdict and/or JNOV is appropriate.

Clearly, Plaintiff's claim is suspect. Indeed, after Plaintiff initiated her

litigation, Plaintiff has now testified that she applied for employment with the

organization which was, at that time, flying the Detroit Tigers. The Detroit Tigers' team

12

consisted of the same core group of players, including those who Plaintiff alleges were her biggest detractors.  This type of inconsistency should not be rewarded by the court.

Indeed, in the instant action, Defendants offered the testimony of a Mark Oumedian.  Mr. Oumedian conducted a prompt and through investigation.  He interviewed Plaintiff and every person Plaintiff suggested should be interviewed.  Without fail the interviews were consistent.  That is, all persons alleged the Rob Mintari was conducting himself improperly.  There was no echoing sentiment that the players behavior was inappropriate.  Obviously, the work environment was not permeated with pervasive sexual harassment to the extent that it would have caused a hostile work environment.

Accordingly, Defendants are entitled to Directed Verdict as a matter of law.

WHEREFORE, Olympia Aviation, L.L.C., requests this Honorable Court grant the within Motion for Directed Verdict and dismiss plaintiff's claims.

> PLUNKETT & COONEY, P.C.
>
> BY: _____
> MICHAEL D. WEAVER  P43985
> Attorney for Defendant
> 38505 Woodward Avenue
> Suite 2000
> Bloomfield Hills, MI  48304
> Tele:  (248) 901-4025

Dated:  March 13, 2003

13

<div style="border: 1px solid black; padding: 10px;">

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed in the pleadings on March 13, 2003.

BY:

| | | | |
|---|---|---|---|
| _X_ | U.S. MAIL | ___ | FAX |
| ___ | HAND DELIVERED | ___ | OVERNIGHT EXPRESS |
| ___ | FEDERAL EXPRESS | ___ | .OTHER |

Signature: _____

DEBRA GIORDANO

</div>

Blmfield.09979.12728.412679-1

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED