UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA KESNER,

    Plaintiff,

v.

LITTLE CAESARS ENTERPRISES, INC.,
a Michigan corporation, OLYMPIA AVIATION,
L.L.C., a Michigan limited liability company,
OLYMPIA ENTERTAINMENT, INC., a Michigan
corporation, DETROIT TIGERS, INC., a Michigan
corporation, and M&M ILITCH HOLDINGS,
INC., a Michigan corporation, jointly and severally,

    Defendants.
_____/

CASE NO. 01-71994
HON. LAWRENCE P. ZATKOFF

Pursuant to Rule 77 (d), FRCivP
COPIES HAVE BEEN MAILED TO THE
FOLLOWING:

Keith Kecskes
Deborah Gordon
Stanley Moore
on June 3, 2003
Alice Taylor

DEPUTY CLERK

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Detroit, State of Michigan, on **JUN 0 3 2003**

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
CHIEF UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendant Olympia Aviations [sic] Renewed Motion for Directed Verdict, Motion for JNOV and Motion for Remitter [sic] and Motion for New Trial. This matter is also before the Court on Plaintiff's Motion for Attorneys' Fees, Costs and Interest. Both motions have been fully briefed. The Court finds that the parties have adequately set forth the relevant law and facts, and that oral argument would not aid in the disposition of the instant motions. *See* E.D. MICH. LR 7.1(e)(2). Accordingly, the Court ORDERS that the motions be decided on the briefs submitted. For the reasons set forth herein, Defendant Olympia Aviations [sic] Renewed

Motion for Directed Verdict, Motion for JNOV and Motion for Remitter [sic] and Motion for New Trial is GRANTED; Plaintiff's motion for Attorneys' Fees, Costs and Interest is DENIED as moot.

## II. BACKGROUND

Plaintiff filed a six-count complaint on April 30, 2001, in which she named the five corporate entities listed in the caption as Defendants. In brief, Plaintiff alleges that she was formerly employed by Defendant Olympia Aviation, and worked as a flight attendant on the Detroit Tigers' team airplane. She alleges that while she was employed, members of the baseball team, as well as the other members of the flight crew, had harassed her and created a hostile work environment. She alleges that she repeatedly complained to her supervisors about this conduct, however, her supervisors did not remedy the situation.

On June 13, 2002, the Court issued an Opinion and Order partially granting Defendants' motion for summary judgment and dismissing all of Plaintiff's claims except for one claim of Sexual Harassment against Defendant Olympia Aviation. A trial was conducted on that count beginning on February 4, 2003, and concluding on February 13, 2003. Before the jury retired to deliberate, the Court instructed the jury with instructions that were supplied to the Court by the parties; the parties mutually agreed upon these instructions. The jury returned a verdict in favor of Plaintiff, and awarding her the following amounts:

| | |
|---|---|
| Economic damages: | $75,000.00; |
| Present non-economic damages: | $75,000.00; |
| Future non-economic damages: | $50,000.00. |

Defendant brings the present motion challenging each award of damages, as well as the overall

2

sufficiency of the evidence supporting the verdict. Defendant brings this motion pursuant to FED. R. CIV. P. 50 and FED. R. CIV. P. 60. Plaintiff also brings a motion seeking an award of attorney's fees and costs.

The Court shall now analyze each argument in the most logical order.

### III. LEGAL STANDARD

Defendant brings its motion pursuant to FED. R. CIV. P. 50 and FED. R. CIV. P. 60. Rule 60 is inapplicable to the present situation because it provides for correcting clerical errors, *see* Rule 60(a), and for relieving parties from final judgment under extraordinary circumstances, such as fraud on the Court, or because the judgment is altogether void, *see* Rule 60(b). Therefore, Rule 60 shall not be addressed.

Rule 50 provides that, after a party has fully presented its evidence at trial, the court may enter judgment as a matter of law that a claim or defense cannot be maintained under controlling law. *See* FED. R. CIV. P. 50(a). After a trial is concluded, a party may renew a motion for judgment as a matter of law. *See* FED. R. CIV. P. 50(b). In ruling on a motion for judgment as a matter of law, the Court may allow the verdict to stand, order a new trial, or direct entry of judgment as a matter of law. *See* FED. R. CIV. P. 50(b)(1).

The burden for ordering a new trial is less than that for directing entry of judgment as a matter of law. Judgment as a matter of law is appropriate either when there is an absence of evidence on an issue or claim essential to a nonmoving party's cause of action or defense, or, when the evidence in favor of the moving party is so overwhelming that reasonable persons could not arrive at a different conclusion. *See* 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, §

3

50.05(3). In other words, the Court must be satisfied that there is insufficient evidence to raise a question of fact, and the Court should not order an entry of judgment if there is a conflict in the evidence. *See Nat'l Polymer Prods., Inc. v. Borg-Warner Corp.* 660 F.2d 171, 178 (6th Cir. 1981). The Court, however, in its discretion, may grant a new trial if the verdict is against the clear weight of the evidence. *See id.* A district court may grant a new trial even though there is substantial evidence to support the verdict. *See Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 200 (1st Cir. 1980) (Coffin, C.J.); *see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, §2539 (3d. ed. 1995).

## IV. ANALYSIS

The Court shall first address Defendant's argument that Plaintiff submitted insufficient evidence to support the verdict. The Court shall address this argument first because if Defendant is correct, then there shall be no need to address any other argument.

In order to be successful on her sexual harassment claim, Plaintiff must prove the following elements:

(1) the employee belonged to a protected group;
(2) the employee was subjected to communication or conduct on the basis of sex;
(3) the employee was subjected to unwelcome sexual conduct or communication;
(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and
(5) respondeat superior.

*See Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993). Defendant argues that Plaintiff did not meet the final two elements: Plaintiff did not demonstrate evidence sufficient to support a finding that Plaintiff worked in a hostile work environment; and Plaintiff did not allege sufficient facts to

4

support a finding of respondeat superior.

### A. Hostile Work Environment

Defendant argues that Plaintiff did not work in a hostile work environment. Defendant concedes that there were some unpleasant episodes that Plaintiff had to endure, for instance, Defendant concedes that Plaintiff and her fellow flight attendants saw some baseball players looking at pornography on the team airplane. Defendant argues, however, that the instances of pornography on the team airplane were isolated, and cannot support a finding of a hostile work environment. In short, Defendant argues that the great weight of the evidence demonstrates that the unpleasant incidents that Plaintiff had to endure were rare and isolated, and therefore, did not create a hostile work environment. For support, Defendant cites cases that state that a workplace that is tinged with occasional vulgar comments or isolated sexual innuendos by boorish co-workers does not make the workplace a hostile work environment, and is therefore not actionable. *See, e.g., Ocheltree v. Scollon*, 308 F.3d 351, 359 (4th Cir. 2002) (vacated by *en banc* panel); *Perry v. Harris Chernin*, 126 F.3d 1010, 1013 (7th Cir. 1997). Defendant also relies on *Ocheltree*, and argues that although the conduct that the plaintiff had to endure in that case was worse than what Plaintiff suffered here, the Fourth Circuit held that there was insufficient evidence to allow a jury to find a hostile work environment. *See id.* at 362.

Defendant's argument, however, fails. While Defendant correctly states that occasional vulgar comments will not give rise to a hostile work environment, the Court finds that Plaintiff's testimony at trial, if believed, could support a claim for hostile work environment. For instance, Plaintiff testified at trial that she was repeatedly called a number of profane names, such as bitch, cunt, and hide. At one memorable point, Plaintiff stated something to the effect of: I was called

5

'bitch' so often that I began to think that my name was 'bitch.' Plaintiff also testified that, while serving dessert on the airplane, some baseball players would ask her if she had any "cooter pie" or "hair pie" for dessert. In addition, Plaintiff testified that some baseball players would shout profanities at her in order to try to intimidate her. Finally, Plaintiff testified that some baseball players, as well as some of the other members of the flight crew, would touch her breasts and her buttocks with their hands. Therefore, the Court finds that there was sufficient evidence to allow a jury to find that Plaintiff worked in a hostile work environment.

The Court also notes that Defendant's reliance on *Ocheltree* is misplaced. Not only has *Ocheltree* been vacated, and is thus not persuasive authority, it is altogether distinguishable. The majority of the panel of the Fourth Circuit that decided *Ocheltree* hinged its decision on a lack of causation, which is the second element of a hostile work environment claim in Michigan. *See Radtke*, 501 N.W.2d at 162. The panel in *Ocheltree* held that the vulgar and sexually explicit activities that the female plaintiff witnessed would have been done by her co-workers whether or not she was a female. *See Ocheltree*, 308 F.3d at 362 ("Ocheltree has presented no legally sufficient evidence demonstrating that her gender motivated the men's sexually explicit conduct and conversations. . . no evidence demonstrating that she would not have been exposed to the same offensive behavior had she been male."). In the present action, however, Plaintiff's testimony provided sufficient evidence to allow a jury to find that the element of causation had been met, and that the comments and conduct of the baseball players and Plaintiff's co-workers were directed towards her because of her gender.

For these reasons, the Court finds that there was sufficient evidence to support all of the elements of Plaintiff's claim of hostile work environment, and therefore the Court cannot enter

6

judgment notwithstanding the verdict. Nor shall the Court enter an order for a new trial because of this issue, either, despite the fact that the Court did not find Plaintiff's testimony to be very credible. In particular, the Court notes that Plaintiff's trial testimony regarding the baseball players and their harassing activity was much more severe than she reported it to be during her deposition. Indeed, the Court notes that, on a number of occasions during her deposition, Defendant's attorney, Mr. Michael Weaver, asked Plaintiff to elaborate on each instance of harassing activity by the baseball players, however, Plaintiff did not give nearly as many details about the baseball player's harassing activity as she did at trial. Despite this, the Court cannot say that the jury's verdict was against the great weight of the evidence, and thus, cannot order a new trial because of this issue.

### B.   Respondeat Superior

In order to satisfy this element of her claim, Plaintiff must prove the following: (1) that her employer knew or should have known that a co-worker or supervisor was sexually harassing her; (2) that her employer failed to adequately investigate and take prompt and appropriate remedial action; and (3) that she did not fail to take advantage of reasonable preventative or corrective opportunities. *See Chambers v. Trettco, Inc.,* 614 N.W.2d 910, 914 (Mich. 2000). An employer may be charged with having knowledge of the harassing behavior if Plaintiff's complaint was made to an individual in "higher management." *See Jager v. Nationwide Truck Brokers, Inc.,* 652 N.W.2d 503, 510 (Mich. Ct. App. 2002). An individual in higher management is someone in the employer's chain-of-command who possesses significant influence in the decision making process of hiring, firing, and disciplining employees. *See id.* Such members of higher management have the ability to effectuate change in the workplace.

Defendant argues that it promptly responded to all of Plaintiff's complaints, and therefore

7

Plaintiff cannot satisfy this element. In particular, Defendant argues that Plaintiff received a copy of an employee handbook that is given to all employees of Ilitch Holdings, Inc., which is a holding company for a number of companies, such as Little Caesar's Enterprises, Inc., the Detroit Tigers, Inc., and Defendant Olympia Aviation. According to the handbook, any complaints of discrimination or harassment should be directed to the Human Resources department. Defendant argues that Plaintiff did not inform the Human Resources department of any alleged mistreatment that she was suffering until she contacted a supervisor in the Human Resources department, Mr. Mark Oumedian, in September 2000. When she contacted Mr. Oumedian, she was in Toronto on a trip with the Detroit Tigers, and she informed Mr. Oumedian that she was going to be in Chicago with the baseball team the following day. The next day, Mr. Oumedian drove to Chicago and met with Plaintiff. During the meeting, she largely complained about the problems that she was having with the flight crew, particularly with Mr. Rob Mintari. Upon investigating Plaintiff's allegations, Mr. Oumedian recommended to the co-president of Ilitch Holdings, Mr. Christopher Ilitch, that two employees of Olympia Aviation should be terminated, Mr. Rob Mintari and Mr. Christina Sharpe. Those two employees were terminated a short time thereafter. Thus, Defendant maintains that it responded as promptly as it could have to Plaintiff's complaints.

Moreover, Defendant argues that there were only two other occasions that Plaintiff complained about the conduct of either the baseball players or other members of the flight crew. First, she, as well as a number of the other flight attendants, stated that a few baseball players were looking at pornography on their computers while on a team flight. Plaintiff, along with the other flights attendants, were offended, and complained about this; shortly thereafter, the former manager of the Detroit Tigers, Mr. Phil Garner, took steps to ensure that the problem was remedied. The

8

problem was in fact remedied as there is no evidence that any baseball players looked at pornography on a team flight again. Second, Plaintiff alleges that she witnessed a baseball player smoking marijuana in the airplane lavatory before a flight. A short time later, Mr. Garner took steps to ensure that no player smoked marijuana, or any other substance, on the team airplane again. In short, Defendant argues that there were only three complaints made by Plaintiff, and that each of her complaints were promptly remedied.

Plaintiff, however, argues that she submitted evidence that demonstrates that the man in charge of Olympia Aviation, Mr. Dennis Gease, was well aware of the fact that Plaintiff was being harassed by both the baseball players and the other members of the flight crew. Plaintiff testified that she repeatedly complained to Mr. Gease about the harassing behavior of the baseball players and the other members of the flight crew. Mr. Gease's testimony corroborates Plaintiff's testimony. Upon reviewing the transcript of his video taped deposition, which was played at trial, the Court finds that Mr. Gease stated on a number of occasions that Plaintiff complained to him about the harassing behavior that she had to endure. *See, e.g.*, Gease Dep. Trns. 9, 10, 12, 36. Mr. Gease also testified that he told Mr. Michael Ilitch, the former co-president of Ilitch Holdings, of the problems that Plaintiff was facing on the team airplane. *See id.* at 10-11.

The Court is persuaded by Defendant's argument. Based on the evidence submitted, a jury could find that Plaintiff complained about the behavior of the baseball players, and of the other members of the flight crew, to Mr. Gease. The jury, however, was not instructed to find whether Mr. Gease was an individual who had the ability to hire, fire, or discipline individuals who engaged in the harassing behavior. *See Jager,* 652 N.W.2d at 510. The Court instructed the jury with jury instructions that were mutually agreed upon by the parties. On the issue of respondeat superior, the

mutually agreed upon jury's instructions were limited to the following:

> Plaintiff must show that her employer, Olympia Aviation, had notice of the alleged harassment and failed to take prompt remedial action. Notice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of the substantial probability that the sexual harassment was occurring.

This instruction is legally insufficient because the jury could have found that Plaintiff reported the harassment to Mr. Gease, and could have found that Mr. Gease did not take appropriate remedial measures. The jury, however, was not required to find that Mr. Gease was an individual that could have effectuated a change in the working environment. Indeed, Defendant argues that Mr. Gease did not have such authority. Although he did oversee Olympia Aviation, Mr. Gease did not have the authority to terminate individuals without the approval of Human Resources.

The Court finds that there is conflicting evidence on this topic. In his video deposition, Mr. Gease insisted that he had the power to fire people; for instance, he fired Mr. Pat White for engaging in inappropriate behavior. Defendant, however, introduced a copy of an employee handbook into evidence, and although it states on the cover that it is for Little Caesar's employees, Defendant's witnesses testified that the handbook applied to all employees of Ilitch Holdings, including those people employed at Olympia Aviation. In addition, Defendant points out that once Plaintiff aimed her complaints in the proper direction—to Human Resources—that immediate steps were taken to correct the situation.

Therefore, the Court concludes that a properly instructed jury could either find that Mr. Gease had the authority to hire, fire, or discipline individuals, and failed to do so, or that Mr. Gease lacked such authority. If a jury finds the former, then a jury can also find that Olympia Aviation was aware of the harassing behavior that Plaintiff was subjected to. If a jury finds the latter, however, then

10

Plaintiff's cause of action fails. Accordingly, the Court shall order a new trial in order that a jury may be properly instructed regarding the issues discussed above.

The Court's holding finds support in the Michigan Court of Appeals decision in *Jager*. There, the plaintiff was being sexually harassed by her co-workers, and complained of the harassment to some of her co-workers, who happened to hold management positions. *See Jager*, 652 N.W.2d at 506. The Michigan Court of Appeals held that reporting the harassing behavior to a co-worker who lacks the authority to hire, fire, or discipline the individual who is engaged in the harassing behavior is insufficient to provide notice to the employer. *See id.* at 510; *see also Sheridan v. Forest Hills Pub. Schs.*, 637 N.W.2d 536, 543-44 (Mich. Ct. App. 2001) ("We reject plaintiff's contention that defendant possessed actual knowledge of a hostile workplace because plaintiff informed the head custodian at Northern of some of her concerns regarding Knapp.").

## V. CONCLUSION

For the reasons set forth above, Defendant Olympia Aviations [sic] Renewed Motion for Directed Verdict, Motion for JNOV and Motion for Remitter [sic] and Motion for New Trial is GRANTED. The Court HEREBY ORDERS that the jury verdict be set aside, and that this cause of action be set for a NEW TRIAL pursuant to FED. R. CIV. P. 50. Plaintiff's motion for Attorneys' Fees, Costs and Interest is DENIED as moot.

IT IS SO ORDERED.

Dated: JUN 0 3 2003

LAWRENCE P. ZATKOFF
CHIEF UNITED STATES DISTRICT JUDGE

11