UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



'03 SEP 12 P3:40

LISA KESNER,

        Plaintiff,

v.

LITTLE CAESARS ENTERPRISES, INC.,
a Michigan corporation, OLYMPIA AVIATION,
L.L.C., a Michigan limited liability company,
OLYMPIA ENTERTAINMENT, INC., a Michigan
corporation, DETROIT TIGERS, INC., a Michigan
corporation, and M&M ILITCH HOLDINGS,
INC., a Michigan corporation, jointly and severally,

        Defendants.

CASE NO. 01-71994
HON. LAWRENCE P. ZATKOFF

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Detroit, State of Michigan, on

## 12 SEP 2003

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
CHIEF UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendant Olympia Aviations [sic] Renewed Motion for Directed Verdict, Motion for JNOV and Motion for Remitter [sic] and Motion for New Trial. This matter is also before the Court on Plaintiff's Motion for Attorneys' Fees, Costs and Interest, Plaintiff's Supplement to Plaintiff's Motion for Attorneys' Fees, Costs, and Interest, and Plaintiff's Motion to Strike Defendants' [sic] Untimely "Second Supplemental Brief" in Support of its Post Trial Motions. All motions have been briefed. The Court finds that the parties have adequately set forth the relevant law and facts, and that oral argument would not aid in the disposition of the instant

motions. *See* E.D. MICH. LR 7.1(e)(2). Accordingly, the Court ORDERS that the motions be decided on the briefs submitted. For the reasons set forth herein, Defendant Olympia Aviations [sic] Renewed Motion for Directed Verdict, Motion for JNOV and Motion for Remitter [sic] and Motion for New Trial is DENIED; Plaintiff's Motion for Attorneys' Fees, Costs and Interest is GRANTED IN PART, and Plaintiff's Motion to Strike Defendants' [sic] Untimely "Second Supplemental Brief" in Support of its Post Trial Motions is DENIED.

## II. BACKGROUND

Plaintiff filed a six-count complaint on April 30, 2001, in which she named the five corporate entities listed in the caption as Defendants. In brief, Plaintiff alleges that she was formerly employed by Defendant Olympia Aviation, and worked as a flight attendant on the Detroit Tigers' team airplane. She alleges that while she was employed, members of the baseball team, as well as the other members of the flight crew, had harassed her and created a hostile work environment. She alleges that she repeatedly complained to her supervisors about this conduct, however, her supervisors did not remedy the situation.

On June 13, 2002, the Court issued an Opinion and Order partially granting Defendants' motion for summary judgment and dismissing all of Plaintiff's claims except for one claim of Sexual Harassment against Defendant Olympia Aviation. A trial was conducted on that count beginning on February 4, 2003, and concluding on February 13, 2003. The jury awarded a verdict in favor of Plaintiff in the following amounts:

| | |
|---|---|
| Economic damages: | $75,000.00; |
| Present non-economic damages: | $75,000.00; |

2

     Future non-economic damages:   $50,000.00.

On March 13, 2003, Defendant filed the present motion challenging each award of damages, as well as the overall sufficiency of the evidence supporting the verdict. Defendant brings this motion pursuant to FED. R. CIV. P. 50 and FED. R. CIV. P. 60. On March 26, 2003, Plaintiff filed a motion for Attorneys' Fees, Costs, and Interest. On June 3, 2003, the Court issued an order granting Defendant's motion for a new trial. On July 1, 2003, the Court granted Plaintiff's motion for reconsideration, and reinstated the judgment. Plaintiff filed her supplement to her motion for an award of attorneys' fees on July 22, 2003 and Defendant filed a response.

The Court never ruled upon Defendant's arguments challenging each award of damages, nor did it rule upon Plaintiff's motion. The Court shall now analyze each argument in the most logical order.

### III. ANALYSIS—DEFENDANT'S MOTION—REMAINING ARGUMENTS

The Court has already addressed Defendant's arguments that Plaintiff submitted insufficient evidence to support the jury's verdict that Plaintiff worked in a hostile work environment. The Court ultimately held that there was sufficient evidence to support the jury's verdict, and therefore rejects Defendant's argument regarding insufficient evidence. In its motion, in addition to asking for judgment notwithstanding verdict or a new trial, Defendant also asks that the Court remit the award that Plaintiff received. Defendant contests each element of the jury's award. The Court shall discuss each element in turn.

  A.  **Future non-economic damages**

Defendant argues that Plaintiff is not entitled to an award of future non-economic damages

because she did not present evidence of her life expectancy. Defendant argues that there must be evidence of future non-economic damages, otherwise the jury would have to speculate as to how long Plaintiff will live and suffer damages. Defendant, however, cites no legal authority for this proposition. Conversely, Plaintiff argues that, under the Michigan Elliott-Larsen Civil Rights Act (hereinafter "ELCRA"), Plaintiff need not present any evidence of life expectancy to obtain future damages.

Plaintiff has the better argument. Under the ELCRA, the Court should not set aside a jury's damage award unless the award was excessive. *See Howard v. Canteen Corp.*, 481 N.W.2d 718, 724 (Mich. Ct. App. 1991) (overruled on other grounds). The Court does not find the jury's award to be excessive; the jury heard Plaintiff's testimony about the humiliation that she suffered while working for Defendant, and was able to observe that she was a relatively healthy looking woman who was under forty years old. The jury determined that an award of $50,000 was a reasonable amount to compensate her, and the Court cannot say that $50,000 is an unreasonable or excessive award. Therefore, the Court shall not grant Defendant's motion to remit the jury award for future damages.

### B. Non-Economic Damages

Defendant argues that Plaintiff offered no evidence from "a psychiatrist, a psychologist, a social worker, a priest or other clergy, or even a counselor," and consequently, has not presented sufficient evidence for an award of non-economic damages. Defendant cites two Sixth Circuit cases, *Moody v. Pepsi-Cola Metro. Bottling Co., Inc.*, 915 F.2d 201 (6th Cir. 1990), and *Wiskotoni v. Mich. Nat'l Bank-W.*, 716 F.2d 378 (6th Cir. 1983), for the proposition that a plaintiff must "specific and definite evidence" of mental anguish or distress. *See Moody*, 915 F.2d at 210 (quoting *Wiskotoni*, 716 F.2d at 389). In discussing *Moody*, Defendant points out that the plaintiff in *Moody* was so

4

distraught that he cried, that he moved his family, and that his marriage was affected by the defendant's conduct. *See Moody*, 915 F.2d at 210. Defendant argues that Plaintiff did not go through the same level of torment that the plaintiff did in *Moody*.

Defendant's argument, however, fails. Defendant concedes that expert testimony is not necessary to support a claim for mental anguish or humiliation. *See id.*, ("Michigan law allows recovery for mental anguish based on Plaintiff's own testimony...."); *see also Riethmiller v. Blue Cross & Blue Shield of Mich.*, 390 N.W.2d 227, 233 (Mich. Ct. App. 1986) ("To the extent the court meant that medical testimony was required to establish a claim for mental distress, the court clearly erred."). The Court also notes that the jury heard Plaintiff's testimony, and that Plaintiff provided "definite and specific evidence" of mental anguish and humiliation. Plaintiff, for instance, stated that she felt degraded upon seeing the pornography and being asked about "cooter pie," she stated that she felt degraded when she was called a "bitch" or a "cunt," and she stated that, after she was yelled at for confronting a baseball player about smoking marijuana on the team airplane, she was so distraught that she could no longer perform her work on that flight. Therefore, the Court shall not grant Defendant's motion to remit the jury award for non-economic damages.

### C. Economic Damages

Defendant next argues that Plaintiff's claim for economic damages must fail. Defendant points to the Court's June 13, 2002, Opinion and Order, which was issued in response to Defendant's Motion for Summary Judgment, and argues that Plaintiff's claims for retaliation and sex discrimination were dismissed, thus eliminating any potential claim for economic damages that Plaintiff may have had. In particular, in response to Defendant's motion for summary judgment, Plaintiff argued that after she met with Mr. Oumedian, and complained to Mr. Oumedian of the

5

harassment that she was enduring, Mr. Christopher Ilitch, the co-president of Ilitch Holdings, realized the potential for legal liability that his companies were facing. In response, Ilitch Holdings chose to remedy the situation by hastily "outsourcing" all of Olympia Aviation's flight operations to Mr. Chuck Shipp, who performed all flight operations for the Detroit Pistons. Plaintiff argues that Mr. Shipp uses the same airplanes that Olympia Aviation used, and that he hired all of Olympia Aviation's former employees except Plaintiff.[1] Thus, there is sufficient evidence of economic damages to support the jury verdict.

### D. Conclusion

For the reasons stated above, the Court finds that Defendant Olympia Aviations [sic] Renewed Motion for Directed Verdict, Motion for JNOV, Motion for Remittitur and Motion for New Trial is DENIED.

## IV. ANALYSIS—PLAINTIFF'S MOTION FOR ATTORNEY FEES

Plaintiff filed a motion for attorney fees, costs, and interest. She also filed a supplemental brief and a motion to strike one of Defendant's pleadings. Defendant does not contest that Plaintiff is entitled to some amount of attorney fees; however, Defendant does contest the reasonableness of the amount Plaintiff requests. The Court shall now analyze Plaintiff's motion for attorney fees.

### A. Whether attorney fees are appropriate

The basic rule regarding the costs of litigation is that, absent statutory authorization or an

---

[1] Defendant makes other arguments regarding the remitittur of Plaintiff's award of economic damages. For instance, Defendant argues that Plaintiff is barred from recovering economic damages because she lied on her job application. But, these arguments are meritless. The Court is only addressing this argument because it is the strongest.

established exception, each party bears his or her own costs of litigation. *See Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997). In the present instance, the Elliott-Larsen Civil Rights Act provides statutory authority for awarding attorney fees and costs.[2]

### 1. Elliott-Larsen Civil Rights Act

The ELCRA allows the Court to award Plaintiff the costs of her litigation, providing: "A court, in rendering a judgment in an action brought pursuant to this article, may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate." MICH. COMP. LAWS § 37.2802. The Michigan Court of Appeals has held that § 37.2802 involves two separate inquiries; first, the Court must determine whether to award attorney fees to a successful plaintiff; second, if attorney fees are awarded, they must be reasonable in amount under *Wood v. Detroit Automobile Inter-Ins. Exchange*, 413 Mich. 573, 588, 321 N.W.2d 653 (1982). *See Eide v. Kelsey-Hayes Co.*, 154 Mich. App. 142, 161-62, 397 N.W.2d 532, 541(1986) *rev'd on other grounds*, 431 Mich. 26, 427 N.W.2d 488. Thus, the threshold question of whether to award attorney fees at all is within the discretion of the Court. *See Eide,* 154 Mich. App. at 161-62, 397 N.W.2d at 541. Although the Court is not required to award fees to a prevailing plaintiff, the Court should be mindful of the following three purposes behind awarding attorney fees in civil rights actions: to encourage people who were deprived of their civil rights to seek redress; to ensure that victims have access to the

---

[2] Although Plaintiff is also entitled to reasonable attorney fees as part of the Michigan fee shifting mediation sanction scheme used by this Court under Local Rule 16.3, Plaintiff acknowledges that she is only entitled to a single "reasonable fee." *See Rafferty v. Markovitz*, 461 Mich. 265, 272-73, 602 N.W.2d 367 (Mich. 1999) (holding that once a plaintiff is compensated for her reasonable attorneys' fees under the ELCRA, she has no remaining "actual costs" for which she can claim compensation under the mediation court rule).

7

courts; and to deter discrimination. *See Meyer v. City of Center Line*, 242 Mich. App. 560, 575-76, 619 N.W.2d 182, 191 (2000). Plaintiff argues that attorney fees would be appropriate in this case because if she was not awarded attorney fees, then she would not be made whole as a significant portion of her judgment would go to pay her attorneys. Plaintiff also argues that making a plaintiff whole is the primary purpose behind civil rights law. *See Rasheed v. Chrysler Corp.*, 445 Mich. 109, 119-20, 517 N.W.2d 19, 25 (1994). Accordingly, the Court finds that an award of reasonable attorney fees under the ELCRA is appropriate in this matter.

### B. Whether the Attorney Fees Requested are Reasonable

The ELCRA states that Plaintiff is entitled to recover only "reasonable" attorney fees. Plaintiff requests an award of attorney fees in the amount of $181,276.25.[3] Defendant argues that a significant portion of Plaintiff's requested attorney fees are unreasonable. The Court shall now analyze the reasonableness of Plaintiff's requested attorney fees.

#### 1. Standard

When determining a reasonable amount of attorney fees, the Court shall apply the "lodestar" method, which multiplies a reasonable hourly rate by a reasonable number of hours billed. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 797-98 (2002). In determining the reasonable number of hours, the Court should exclude hours that were not reasonably expended, such as excessive, redundant, or otherwise unnecessary hours. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward . . . ." *Id.*

---

[3] This amount, as well as all subsequent amounts and calculations, includes the amount of time and costs that are reported in the Supplement to Plaintiff's Motion for Attorneys' Fees, Costs and Interest.

8

at 434.[4]

Specifically, the Michigan Supreme Court has announced a non-exhaustive list of six factors to be considered in adjusting an attorney fee award upward or downward under the ELCRA: 1) the professional standing and experience of the attorney; 2) the skill, time, and labor involved; 3) the amount in question and the results achieved; 4) the difficulty of the case; 5) the expenses incurred; and 6) the nature and length of the professional relationship with the client. *See Wood*, 413 Mich. at 588. Federal courts apply *Wood* when considering a motion for attorney fees under the ELRCA. *See Brocklehurst v. PPG Indust., Inc.*, 907 F. Supp. 1106, 1108 (E.D. Mich. 1995) (recognizing that the factors put forth in *Wood* apply after the basic entitlement to attorney fees has been established). Another factor recognized by Michigan courts as useful in determining a reasonable fee is the existence of a contingent fee arrangement. *See Wilson v. General Motors Corp.*, 183 Mich. App. 21, 454 N.W.2d 405 (1990) ("We agree with the defendant that the circuit judge should have considered the contingency fee arrangement when determining a reasonable fee but disagree that this would automatically preclude a fee award under § 802.") The Court shall apply these principles currently.

### 2. "Lodestar" Calculation

As stated by the United States Supreme Court, the first step is to multiply the number of hours billed by the hourly rate; this will be the number from which the Court will begin its analysis. In this case, that number is $181,276.25. According to Plaintiff, $33,480.00 is attributable to work performed by Keith Keeskes and Paul Miller, while $147,796.25 is attributable to work performed

---

[4]Federal law and state law are largely consistent on this topic. *Compare Hamlin v. Charter Township of Flint*, 165 F.3d 426, 437 (6th Cir.1999) (citing *Hensley*, 461 U.S. at 430 n.3) *with Wood v. Detroit Auto. Inter-Insurance Exch.*, 321 N.W.2d 653, 661 (Mich. 1982).

by Deborah L. Gordon's firm. Of the $181,276.25 that Plaintiff seeks in her motion, Defendant objected to $88,902.50 of that amount; conversely, Defendant does not make specific objections as to $92,373.75.

### 3. Reasonableness

The Court shall now determine whether the hours billed by Plaintiff's attorneys are reasonable on their face and can be included in the lodestar calculation. The Court finds that the amount of attorney fees that Defendant has not objected to are not unreasonable on their face. In particular, the Court notes that Defendant does not object to most of the expenses incurred by Mr. Kceskes and Mr. Miller; most of the expenses that they incurred came as a result of discovery, performing research, and writing briefs. The Court also notes that Ms. Gordon and her associates spent a significant amount of time preparing for and taking the depositions of a number of the baseball players, preparing for trial, and then spending time in trial. In addition, the Court also finds that the hourly rates charged by Plaintiff's attorneys were reasonable; for instance, although Ms. Gordon charges a rather high hourly rate, $275 per hour, the Court finds that such a rate is reasonable because she is an experienced employment law specialist. The Court also finds the rates charged by Ms. Gordon's associates, as well as the rates charged by Mr. Kceskes and Mr. Miller, to be reasonable. Therefore, the Court finds that the hours spent incurring $99,022.50 worth of fees are not unreasonable on their face. The Court does find persuasive, however, some of Defendant's specific objections regarding additional hours billed by Plaintiff's attorneys. Because these hours billed were either redundant or unnecessary, they are unreasonable on their face and cannot be included in the initial lodestar calculation. *See Hensley*, 461 U.S. at 434. The Court will now address Defendant's objections.

*Petition for costs*: Defendant points out that Plaintiff's counsel took 21.6 hours to prepare her petition for costs, which is currently under review. Defendant argues that such an amount of time is unreasonable because Plaintiff's counsel has made at least some similar petitions before. This is not a meritorious objection; the preparation of such a petition requires a lawyer to corral the facts of the case, the amount of time billed, as well as the amount of time necessary to actually create the petition. Indeed, this Court has spent roughly twenty-one hours reviewing the briefs that were filed regarding Plaintiff's motion for costs, researching the issues, and creating this Opinion and Order. Therefore, this objection is meritless.

*Trial Brief:* During trial, the Court had the parties submit a trial brief. Plaintiff submitted a three page brief. Plaintiff's attorneys, however, billed 43.9 hours in the creation of that brief. Plaintiff's explanation is that a number of different briefs were drafted in anticipation of different arguments that Defendant would possibly raise during trial. Although the Court understands Plaintiff's position, it notes that Plaintiff began creating her trial briefs before trial began, and before the Court ordered a single trial brief. Therefore, the Court finds only those hours billed after trial actually began on February 4, 2003 to be reasonable. Accordingly, the Court only finds reasonable those hours billed on February 4, February 5, and February 7, 2003, which is 24.2 hours, for a total of $4,745.00; this amount is $3,285.00 less than the $8,030.00 that Plaintiff had originally requested.

*Motion to Amend*: Shortly after Ms. Gordon began representing Plaintiff, Plaintiff filed a motion to amend her complaint. This motion was made several months after the Court issued its June 13, 2002, Opinion and Order. The Court found this motion to be filed very late in the action, as it was filed *after* discovery cut-off and after the Court ruled on a motion for summary judgment,

11

and that the motion to amend was effectively a belated motion for reconsideration. As a result, the Court denied this motion. Because this was not a successful motion, the Court will not award Plaintiff the attorney fees that were incurred in drafting this motion. Defendant asserts that Plaintiff is requesting $11,206.25 in connection with her motion to amend. After reviewing the documents submitted, the Court agrees with Defendant's assertion. Therefore, the hours spent drafting the motion to amend her complaint are not reasonable for the purpose of calculating the lodestar amount.

*Deposition of Doug Brocail*: Defendant notes that Ms. Gordon billed 1.7 hours for preparing and "taking" Mr. Brocail's deposition. Defendant also notes that the deposition was taken by Mr. Keeskes, and that the deposition actually took one hour and fourteen minutes. Plaintiff, however, argues that while Ms. Gordon did not take Mr. Brocail's deposition, she did attend. The Court finds Defendant's argument persuasive. Ms. Gordon's attendance created billable time that was "redundant" of Mr. Keeskes's billable time spent taking the deposition. Therefore, the 1.7 hours for "taking" Mr. Brocail's deposition shall not be used to calculate the lodestar amount.

*Motions in Limine*: the depositions of the baseball players and the former manager of the Detroit Tigers, Mr. Phil Garner, were taken on video tape so that the depositions may be shown to the jury. Defendant filed a number of motions in limine to redact certain questions and answers from the video tapes. Defendant argues that the time Plaintiff spent in responding to Defendant's motions in limine is unreasonable. The Court disagrees. Defendant's motions in limine were voluminous and exhaustive, objecting to large portions of the depositions. The Court decided to dispose of Defendant's motions by an oral order, as opposed to a written order, in order to save itself a good deal of time; otherwise, the Court would have likely taken several days to produce a written order disposing of Defendant's motions in limine. Thus, the Court cannot say that the amount of time that

12

Plaintiff spent in responding to these motions was unreasonable.

*Chronology*: Defendant argues that Plaintiff's attorneys spent an excessive amount of time—53.15 hours—preparing and reviewing a chronology of this action. Ms. Gordon and her law firm only entered this action after Mr. Keeskes performed most of the discovery. This made it necessary for Plaintiff's new counsel to review all of the depositions that were already taken, and piece together the facts of the case for their own understanding. This time only became necessary because Plaintiff hired a new counsel after this action had been in progress for well over a year; thus, there were a number of redundant hours involved, as the new counsel had to learn what Plaintiff's previous counsel had already known. Indeed, the only reason these hours were incurred was because Plaintiff decided to hire a new attorney. Consequently, the Court finds that these attorney fees were not reasonably incurred, and accordingly, these hours will not be used in the lodestar calculation.

*Random Hours for Ms. Hayes*: Defendant argues that Ms. Hayes spent a number of "random hours" working with a group called "Litigation Specialists," and that such unspecified amounts were unreasonably incurred. Plaintiff, however, points out that "Litigation Specialists" created the "story boards" that both Plaintiff and Defendant used at trial, and it is reasonable to expect that the organization creating such story boards would want to consult its client to ensure that such boards are accurate. Thus, the Court finds Defendant's objection to be meritless.

*Random Time for Ms. Sande*: Defendant also argues that Ms. Sande spent some time researching a potential claim for intentional infliction of emotional distress against the baseball players because they directly harassed Plaintiff. While the Court had wondered why Plaintiff did not name the individual baseball players as defendants, Plaintiff's attorney did not research this issue until January 2003, which is several months after the Court denied Plaintiff's early motion to amend

13

her complaint, and only a few weeks before trial began. Consequently, the Court does not find these hours to be reasonably expended.

*Motion for Remand*: Plaintiff filed a motion to remand, which the Court denied. Defendant objects to $997.50 worth of attorney fees that Plaintiff incurred while presenting this motion. As with the motion to amend, the Court shall not award Plaintiff the attorney fees associated with this motion because it was an unsuccessful motion. Therefore, hours spent drafting this motion shall not be used in the lodestar calculation.

*Story Boards*: Defendant argues that the roughly twenty hours that Plaintiff's attorneys billed in connection with the creation of the story boards is unreasonable, especially because these boards were created by an outside consultant group. The Court disagrees; it is reasonable to expect that Plaintiff's counsel would work closely with the group that created these boards for Plaintiff in order to ensure their accuracy, and to ensure that the boards have their desired appearance.

*Trial Exhibits*: Defendant objects to the 5.6 hours that Plaintiff's counsel billed in creating Plaintiff's trial exhibits, especially in light of the fact that Plaintiff only introduced three exhibits into evidence. The Court finds the amount of time expended to be reasonable; Plaintiff's counsel needed to sift through the documents to find which exhibits would advance Plaintiff's claims. Given the number of documents produced in this case, the Court does not find this amount of time to be unreasonable.

*Plaintiff's Medical Records and History*: Defendant argues that Plaintiff's attorneys spent an unreasonable amount of time reviewing Plaintiff's medical history and records, especially in light of the fact that Plaintiff referred to none of her medical history in testifying about her damages. The Court notes that Plaintiff's medical history has been an issue throughout this litigation, and that it

14

was quite reasonable for Plaintiff's counsel to assume that Plaintiff's medical history would be an issue that Defendant would cross-examine Plaintiff on at trial. Therefore, Plaintiff's counsel would need to be familiar with Plaintiff's medical history in order to refute Defendant's cross-examination. Therefore, this request is not unreasonable.

*Plaintiff's Proposed Voir Dire*: Defendant states that the amount of time Plaintiff spent proposing questions for voir dire was unreasonable given the limited number of questions asked during voir dire. Plaintiff's counsel, however, only spent 5.5 hours preparing for voir dire, which the Court does not find to be excessive.

*Trial*: Defendant argues that trial was in session from only 8:30 until 1:00 every day, however, Ms. Gordon billed her client much more than four and a half hours of time in "trial" on some occasions. While the Court agrees that Ms. Gordon could not spend more than four and a half hours a day in trial, the Court does not doubt that Ms. Gordon probably spent several hours at her office working on trial-related matters. Therefore, the Court finds that while Ms. Gordon's entry on her log is inaccurately labeled, the Court cannot say that the number of hours spent were unreasonable.

*Media*: Defendant argues that Plaintiff is claiming attorney fees for the amount of time her attorney spent with the media. Plaintiff concedes that this is not a properly billed expense, and agrees to withdraw her claim for $262.50 that her attorneys incurred in dealing with the media.

*Kecskes & Miller*: Defendant argues that $6,200.00 in attorney fees that were incurred by Mr. Kecskes and Mr. Miller are unreasonable. Defendant does not specify their objection, other than to note that Mr. Kecskes spent forty hours in responding to Defendant's motion for summary judgment. The Court finds that taking forty hours to file a response to a motion for summary judgment to be

15

completely reasonable; in fact, the Court took more than forty hours to draft its June 13, 2002, Opinion and Order.

*Final Pre-Trial Order*: Defendant argues that Plaintiff's attorneys billed 11.2 hours in creating the final pre-trial order, however, the order was only eight pages long, and only four pages were created by Plaintiff. The Court, however, finds this length of time to be reasonable.

*Plaintiff's Motion for Reconsideration*: Defendant argues that $6,648.75 in attorney fees that were incurred by Deborah Gordon and Carol Laughbaum are unreasonable. Specifically, Defendant claims that 31.5 hours in reviewing this Court's June 3, 2003, Opinion and Order, drafting a successful Motion for Reconsideration, and drafting a supplemental motion for attorney fees is unreasonable. The Court, however, finds the length of time to be reasonable.

Accordingly, considering Plaintiff's evidence regarding hours billed and Defendant's objections to those same hours, the Court finds that, as an initial matter, only $159,644.75 of the $181,276.25 can be properly considered a reasonable lodestar calculation. The number of hours eliminated were simply unreasonable on their face and cannot be considered in the lodestar calculation. In addition, the Court finds that a further reduction in attorney fees is warranted upon consideration of the factors set forth in *Wood*.

### 4. Additional factors affecting the reasonableness of the fee award

A trial court is required to consider the following six factors in determining a reasonable fee award: 1) the professional standing and experience of the attorney; 2) the skill, time, and labor involved; 3) the amount in question and the results achieved; 4) the difficulty of the case; 5) the expenses incurred; and 6) the nature and length of the professional relationship with the client. *See Wood*, 413 Mich. at 588. These factors will determine the departure, if any, from the lodestar

16

amount. *See Riethmiller v. Blue Cross & Blue Shield*, 151 Mich. App. 188, 203, 390 N.W.2d 227, 234 (1986) (holding that trial court did not abuse its discretion when it awarded the plaintiff half of his attorney fees after its consideration of the *Wood* factors).

Some of the factors put forth in *Wood* support Plaintiff's motion for attorney fees. For instance, the Court recognizes that Ms. Gordon is an experienced employment law specialist. The Court also recognizes that a significant amount of skill, time, and labor was involved in pursuing this case. The Court finds, however, that other important factors support a reduction in the amount of attorney fees awarded to Plaintiff.

Under federal and state law, an important factor in determining a reasonable fee award is "the amount in question and the results achieved." *Wood*, 413 Mich. at 588. Plaintiff argues that since the ultimate verdict exceeded the $25,000.00 case evaluation award, the result was "very good." *Plaintiff's Brief in Support of Motion for Attorneys' Fees, Costs and Interest*, at 10. While a jury verdict of $200,000.00 is not insubstantial, Defendant correctly points out that this case began with six counts against five different defendants. Thus, Plaintiff was unsuccessful on six counts against four defendants and unsuccessful on five counts against the remaining Defendant. In *Hensley*, the Supreme Court held that the degree of a plaintiff's success is a "crucial" factor in determining a proper award of attorney fees under § 1988. *See Hensley*, 461 U.S. 424, 440. While Plaintiff's claims of retaliation, sex discrimination, and intentional infliction of emotional distress may have been sufficiently related to Plaintiff's successful claim of sexual harassment to be preclude a downward adjustment of the fee award based on the ultimate failure of those claims, the remaining two claims are not so related. *See Hensley*, 461 U.S. at 434-35. Plaintiff's claims of defamation and tortious interference with business expectation are based on different facts and legal theories and are

17

unrelated to the sexual harassment claim. *See id.* Therefore, the Court finds that because Plaintiff was unsuccessful on at least two separate and distinct claims against the Defendants in this case, her attorney fee award under the ELCRA should be reduced. *See e.g., Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 909-10 (1991) (holding that the proper reduction in plaintiff's fee award was fifty percent given that plaintiff was unsuccessful on half of her claims).

Another important factor is the "difficulty of the case." *Wood*, 413 Mich. at 588. The Court finds nothing particularly difficult about this case. Plaintiff argues that the case was difficult because it was contentious, because Defendant refused to settle, and because the owners of Defendant corporation are "high profile." The Court finds these arguments to be meritless. Litigation is contentious by nature and Defendant's refusal to settle can hardly be considered a factor increasing the difficulty of the case. Plaintiff also provides no evidence that the "high profile" nature of Defendant's owners increased its difficulty. The Michigan Court of Appeals has held that a plaintiff's fee award should be reduced based on the routine nature of the case. *See Collister v. Sunshine Food Stores, Inc.*, 166 Mich. App. 272, 274-75, 419 N.W.2d 781 (1988) (noting that the plaintiff did not "compile statistical evidence or present complicated proofs" and that the plaintiff's case "did not involve an advancement of the case law . . ."). Accordingly, the Court finds nothing particularly difficult about the present case to support Plaintiff's claim for attorney fees.

The final factor that supports a reduced fee award in this case is the fact that Plaintiff has contracted with her attorneys on a contingency fee basis. Thus, Plaintiff's attorneys stand to gain from Plaintiff's case whether attorney fees are awarded or not. The Court finds the existence of the contingent fee arrangement in this case to be merely one additional factor supporting an overall reduction in Plaintiff's fee award. *See Wilson*, 183 Mich. App. at 41-42, 454 N.W.2d at 415.

18

Accordingly, considering these above factors, the Court finds it necessary to further reduce the lodestar calculation from $159,644.75 to $92,373.75. The Court finds $92,373.75 to be a reasonable fee award in light of the parties' arguments and the factors set forth in *Wood*.

### C. Conclusion

The Court concludes that Plaintiff's reasonably incurred attorneys fees amount to $92,373.75. Defendant is HEREBY ORDERED to pay Plaintiff these reasonably incurred attorney fees. In addition, the Court HEREBY ORDERS Defendant to pay $12,995.82 in costs.[5] Finally, Defendant is HEREBY ORDERED to pay pre-judgment interest and post-judgment interest to Plaintiff pursuant to MICH. COMP. LAWS § 600.6013. Because this action is not one for personal injury, Defendant is not required to pay pre-judgment interest on awards for future damages. *See Phinney v. Permutter*, 222 Mich. App. 513, 540-542, 564 N.W.2d 532, 549-550 (1997).

### V. ANALYSIS - PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S SUPPLEMENTAL BRIEF

Plaintiff objects to Defendant filing a short pleading directing the Court to rule on issues regarding remittitur that were not addressed in this Court's June 3, 2003, Opinion and Order. Since Defendant's Renewed Motion for Directed Verdict, Motion for JNOV and Motion for Remitter [sic] and Motion for New Trial has been denied, Plaintiff's motion to strike is DENIED as moot.

---

[5] Defendant objects to a $150.00 fee that Mr. Kecskes incurred as a result of his filing his case evaluation summary in an untimely manner. Plaintiff did not respond to this objection. Therefore, the Court shall reduce the amount of costs incurred by this amount.

19

## VI. CONCLUSION

For the reasons set forth above, Defendant Olympia Aviations [sic] Renewed Motion for Directed Verdict, Motion for JNOV and Motion for Remitter [sic] and Motion for New Trial is DENIED; Plaintiff's motion for Attorneys' Fees, Costs and Interest is GRANTED IN PART, and Plaintiff's Motion to Strike Defendants' [sic] Untimely "Second Supplemental Brief" in Support of its Post Trial Motions is DENIED.

IT IS SO ORDERED.

Dated: **12 SEP 2003**

LAWRENCE P. ZATKOFF
CHIEF UNITED STATES DISTRICT JUDGE

Pursuant to Rule 77 (d), FRCivP
COPIES HAVE BEEN MAILED TO THE
FOLLOWING:

Keith Kecskes, Esq.
Deborah Gordon, Esq.
Michael Weaver, Esq.

on **12 SEP 2003**

DEPUTY CLERK

20